Moncure, J.
The tract of land called Broomfield, and not the personal estate of John Daniel, was the primary fund for the payment of the debt of five thousand dollars due to the president and masters or professors of William and Mary college, and secured by deed of trust on the land. When land is sold subject to a mortgage as part of the consideration money, the grantee, as between himself and the grantor, is bound to pay, and is liable to an action on the part of the grantor for breach of contract in not paying the *207 debt; but the grantee does not become personally liable to the mortgagee without some promise made to llim; and even a promise made to him, does not always change the primary liability from the mortgaged land to the personal estate of the grantee. It must be made with intention to have that effect. For the authorities on this subject, see 1 Leading Cases in Equity 415-440, 65 Law Libr. 432-456. Though the land in question was conveyed by the devisees of Judge Daniel to John Daniel, with covenant of general warranty, it was in effect conveyed subject to the incumbrance of the deed of trust; the debt secured by which was part of the consideration money. The latter undertook with the former, and was bound to them, to discharge the incumbrance; but he had no communication, and made no contract for that purpose with the creditor.
At the death of John Daniel, his widow the appellant Mary Ann Daniel, had a right of dower in the said tract of land subject to the said deed of trust; in other words, in the equity of redemption. Heth v. Cocke & wife, 1 Rand. 344. The land being the primary fund for the payment of the debt secured by the deed of trust, she had no right to have it paid out of the personal estate, even if that had not been, as it was, required for the payment of his other debts, to which it was wholly inadequate. She had a clear right to redeem the land and disengage it from the incumbrance, in order to make her own claim beneficial or available. 2 Story’s Eq. Jur. § 1023. She was entitled to go into a court of equity to have the land sold, the incumbrance discharged, and her right of dower in the surplus secured to her. The creditor was unwilling to wait longer for the debt, and a sale of the land for its payment was necessary. The trustee in the deed might have sold it without any decree for the purpose. He might have sold the *208 whole tract, as the deed provided for a sale of the whole; and in that case the surplus would have been subject to the rights of the widow and heirs to be adjusted and secured by the decree of a court of equity. The trustee was in declining health, and probably was not able to execute the trust. He died pending the suit, and shortly after it was brought. The creditor might have come into a court of equity in consequence of the death of the trustee ,or his inability to act, and had the land sold, the debt paid, and the surplus disposed of, as before mentioned, under a decree of the court. Or the widow and heirs or any or either of them might have brought a suit for the same purpose. It was not material by which of these parties the suit was brought, so that it was brought for that purpose, and the necessary parties were made.
The suit brought by the appellant Mary Ann Daniel was substantially, I think, a suit of that kind. Her bill set forth all the necessary facts, and made all proper parties. She expressed her fears, from information received, that the president and masters or professors of William and Mary college were unwilling longer to continue the loan, which under the deed they had a right to recall at their pleasure. And she prayed, in effect, that if they were unwilling to do so, the land should be sold with a clear title to the purchaser, and out of the proceeds of sale, after paying the expenses thereof, the debt of five thousand dollars with any interest which might be then due thereon should be paid, and that the surplus should be invested in the purchase of such of the slaves of her husband (some of whom were represented as of peculiar value) as would likely be most profitable to her and her children, to be held by them subject to the laws of descent which are applicable to real estate. If this had been the whole frame of the bill, there could have been no *209 objection to it in form or substance. I see no impropriety in the prayer that the residue of the proceeds of sale of the land after paying off the incumbrance should be invested in the purchase of slaves to be held as real estate. Though the court could not have converted land into slaves in such a suit merely because the interest of the widow and heirs required it; yet having properly converted the land into money for the purpose of discharging the incumbrance, it might properly invest the surplus in any subject which the interest of the widow and heirs might require, provided the subject retained the character of realty. At all events, it could not be contended that a prayer for such an investment would invalidate the sale of the land.
But the bill prays for other and alternative relief, which it is supposed rendered the sale null and void. It prays for a sale of the land subject to the incumbrance, if the president and masters or professors of William and Mary college and the executor of Judge Daniel were willing to continue the loan. There would seem to be little substantial difference between a sale of the land and payment of the debt out of the proceeds, and a sale of the land subject to the payment of the debt. In either case the amount of the debt would, in effect, be a part of the price of the land. In. the one case, it would be paid immediately; in the other, it would be assumed by the purchaser and paid by him afterwards. The chief difference would seem to consist in the accommodation which the latter mode would afford to the purchaser, and the enhancement of the sale which it would probably occasion. In either mode, the widow and heirs would realize the value of the equity of redemption, to be disposed of for their benefit and according to their respective rights. But let it be conceded that in this *210 suit there could properly have been no sale of the land subject to the incumbrance; and that the prayer for such a sale was an improper prayer. Would its insertion in the bill affect the sale ? I think not. At most it would be mere surplusage, there being enough in the bill to sustain the propriety of the decree which was made. The president and masters or professors of William and Mary college and the executor of Judge Daniel were unwilling to continue the loan. This rendered the prayer for a sale of the land subject to the incumbrance ineffectual; and made it necessary to proceed on the alternative prayer for a sale of the land and payment of the incumbrance out of the proceeds. The decree was such a one as might well have been made if the bill had been properly framed, and had contained no superfluous allegation or prayer. And the sale was made according to the decree. It is the business of a purchaser at a judicial sale to see that all the persons who are necessary to convey the title are before the court, and that the sale is made according to the decree. But he “ will not be affected by error in the decree, such as not giving an infant a day to show cause, in cases in which a day ought to be given; or decreeing a sale of lands to satisfy judgment debts without an account of personal estate.” 2 Daniel’s Ch. Pr. 1456; Bennett v. Hamill, 2 Sch. & Lef. 566; Lloyd v. Johnes, 9 Ves. R. 37. A fortiori he will not be affected by any imperfection in the frame of the bill, if it contain sufficient matter to show the propriety of the decree. No more of the estate was sold in this case than was proper for the purpose of paying off the incumbrance: And that portion of it was sold which the convenience of the owners required. This is shown by the fact, that after the sale was set aside the Circuit court decreed a resale of the very same portion for the purpose of refunding to the purchaser *211 the amount of the incumbrance which had been discharged out of the purchase money paid by him. But if more of the estate had been sold than was necessary to discharge the incumbrance, the purchaser could make no objection to it, “ the decree being a sufficient security to him, as it cannot appear but that it was right to sell the whole.” 1 Sugd. on Vend. 68. (In fact, the deed of trust in this case provided for a sale of the whole.) Nor is he answerable for any disposition which the court may make of the purchase money. Brown v. Wallace, 4 Gill & John. 479. Nor for any error which the court may afterwards commit in decreeing a sale of the residue of the land. According to these views there was no defect in the title of the purchaser under the decree in this case.
But if there had been such defect I am of opinion that it was not incurable; and that it might, and ought to have been cured by a decree of confirmation in one or both of the other suits which were brought for that purpose. The highest bidder at a judicial sale is not considered as the purchaser until the report of sale is confirmed. Until then, according to the English practice, he has no right to resell at a profit, except for the benefit of the owner of the estate. He is not liable to any loss by fire or otherwise, which may happen to the estate. Nor is he entitled to the benefit of any material appreciation of the estate by the accidental falling in of lives or by other means. Heywood v. Covington's heirs, 4 Leigh 373; Taylor v. Cooper, 10 Leigh 317. As the chief aim of the court is to obtain as great a price for the estate as possible, it is in the habit, under certain regulations, of opening the biddings. 1 Sugd. on Vend. 84. It is unnecessary to enquire how far the English practice in these respects has been departed from in Virginia. Our courts certainly exercise a large discretion in refusing to con *212 firm a report of sale, and in ordering a resale of property sold under a decree. They will not confirm a report of sale and compel a purchaser to complete his purchase when there is any defect of title of which he had no knowledge when the sale was made. Nor will they confirm it when the directions of the decree in regard to the sale have not been pursued, if either party object to such confirmation. Accordingly, in Talley &c. v. Starke's adm'r, 6 Gratt. 339, in which the land was not sold on the premises as dii’ected by the decree, and the confirmation of the report was opposed by two of the purchasers on that ground; this court, for that and other reasons, revei'sed the decree of confirmation; saying that inasmuch as the purchasers could not have enforced their contracts, if resisted by the parties in the cause, they ought not to be compelled to perfect them. If therefore there was any defect in the title which the purchaser could acquire under the decree in this case, the coiu-t on his motion would have refused to confirm the report of sale, and discharged him from his purchase.
'But after confirmation of a report of sale, without any objection on the part of the purchaser, his rights and obligations are very different. His inchoate contract is then perfected, and the court has a right to compel him to complete his purchase. He has still a right, according to the English practice, to have an order to enquire whether a good title can be made to him. But he may waive that enquiry; and if he pay the purchase money and enter into possession of the property, he will generally be considei'ed as having waived the enquiry and accepted the title. 1 Sugd. on Vend. 73. In Virginia it would seem that the proper time for making objections to the title, and for having an enquiry, if one is desired, is before the confirmation of the report. Threlkelds v. Campbell, 2 Gratt. 198; *213 Young’s adm’r v. McClung, 9 Gratt. 336. There are certainly some defects to which objection may be made by a purchaser even after confirmation, here as well as in England: such, for example, as a defect arising from a want of jurisdiction, or want of parties, which would prevent a purchaser from getting the title intended to be sold and conveyed to him. But there is this difference between such an objection made before and after confirmation; that in the former case, if the objection be well founded, the purchaser will be discharged peremptorily; whereas, in the latter, he will be discharged only if the defect be incurable, or be not cured in a reasonable time. A complete contract having, in the latter case, been made between the court and the purchaser, the court has the same right which any other vendor has to cure defects and perfect the title, provided it be done in a reasonable time, so as to occasion no injury to the purchaser. On a reference as to title in a suit for specific performance the enquiry generally is, Whether the vendor can, not whether he could make a title at the time of entering into the agreement ? If a good title can be shown at any time before the master’s report, and even after the report, if the vendor can satisfy the court that he can make a good title by clearing up the objections reported by the master, the court will generally make a decree in his favor. See 2 Daniel’s Ch. Pr. 1195, and notes; Seton v. Slade, 3 Leading Cases in Equity 392, 72 Law Libr. 14. “Where (says Lord Eldon) the master’s report is that the vendor getting in a term or getting administration, &c. will have a title, the court will put him under terms to procure that speedily.” Coffin v. Cooper, 14 Ves. R. 205. In which case it was held that the purchaser could not insist on being discharged from the contract, the vendor having pro- ■ cured a good title by means of an act of parliament, *214 although, upwards of a month after the master’s report. It is true that in a case where there was error in the decree under which the estate was sold the purchaser was discharged, upon motion, from his purchase, although the parties were proceeding to rectify it: Lord Eldon, who decided the case, saying that he would not extend the rule which the court had adopted, of compelling a purchaser to take the estate when a title is not made till after the contract, to any case to which it had not already been applied. Lechmere v. Brasier, 2 Jac. & Walk. 287. I have no doubt of the correctness of the decision of that case, in which it seems a good title could not have been made until an infant heir became of age. But I cannot see why the same rule which applies to ordinary cases, should not apply to a judicial sale in this respect. The court considers itself to have greater power over the contract of sale when it is made under a decree, than when it is made between party and party. 2 Daniel’s Ch. Pr. 1465. And it may therefore exercise at least as much discretion in affording parties an opportunity of perfecting the title in the former as in the latter case. In the subsequent case of Chamberlain v. Lee, 10 Sim. R. 444, 16 Eng. Ch. R. 445, the case of Lechmere v. Brasier was not considered as making a judicial sale an exception to the general rule; but it being discovered after the sale of an estate under a decree, and after the confirmation of the report of sale, that a small portion of the estate was the property of another person, the court would not discharge the purchaser from his contract, without giving the vendor an opportunity of acquiring a title to that portion. In the case of Cralle v. Meem, 8 Gratt. 496, land in which infants were interested was sold under a decree prematurely made, and the report of sale was confirmed: it was held that although *215 it was competent for the court, the proceedings being interlocutory, to set them aside in the further progress of the cause, upon its appearing that they were prejudicial to the interests of the infants; yet, on the other hand, it appearing to be beneficial to them, there could be no good reason for disturbing them in behalf of any other party. This court was of opinion that the sale should be established or set aside, according as the Circuit court should consider it to be advantageous to the infant heirs. I can see little or no difference, in principle, between that case and this. There, as here, infants were interested in the land decreed to be sold, and the report of sale was confirmed before any objection was made by the purchaser. There, as here, the purchaser contended that he was not bound because the infants were not bound. But the court in that case held, as I think it ought in this, that as the ground of objection to the title might be removed by a further decree of the court, the sale should be established and the purchaser compelled to complete his purchase if the interest of the infants required it.
Whatever defect or irregularity there may have been in the proceedings in this case, it is not pretended that there was any fraud or unfairness on the part of those by whom or for whose benefit they were conducted. They lona file believed that the proceedings were all right and legal, and that a good title could and would be conveyed to the purchaser. This gives them a strong claim on the consideration of the court in the exercise of its discretion to compel the purchaser to complete his purchase. On the other hand, the purchaser, while it cannot be said that he has been guilty of any bad faith or unfairness, has certainly no just claim on the court to interpose in his favor and discharge him from his purchase. He did not file his *216 petition until aftei’ the sale had been confirmed, the possession of the land delivered to him, the greater part of the purchase money paid by him, the amount so paid applied to the discharge of the incumbrance, and otherwise according to the direction of the court, and the land released from the lien of the deed of trust; nor until nine months after the sale. The excuse assigned in his petition for not filing it sooner, was that he had no knowledge of the proceedings in the cause until within a few days past. Though he admits that when he saw the advertisement of the sale in the newspapei's and spoke of becoming a bidder, he heard it suggested that the proceedings had in the case were perhaps not exactly regular, but says the suggestion made no impression on his mind, and supposing that all things had been rightly done in the cause, he attended the sale and became a bidder. Notwithstanding the admonition he had thus early received, he took no step, either before or after the sale, until a few days before the filing of his petition, to inform himself of the correctness of the proceedings, or to obtain the advice of counsel in regard to the title; but chose to rely on a conversation, which he says he sought and had before he paid one cent of the money, with" one of the commissioners, who was the lawyer that conducted all the proceedings; and who, he says, in that conversation assured him that all things had been rightly done in the suit, and that a good title would therein be made to him. This assurance being fairly given, it is not perceived in what manner it can help the purchaser. Under these circumstances, he had no right to demand an absolute discharge from his purchase, even if the title was defective ; but the utmost extent of the relief to which he was entitled was to be discharged if the defect could not, or in a reasonable time should not, be cured. The defect, if any, *217 was curable; and in a reasonable time could have been cured, by a decree in one or both of the suits brought for that purpose, as soon as convenient after the petition was filed. There was no unnecessary delay in the prosecution of those suits, which was not occasioned by the petitioner himself. He was the only reluctant party; against him alone the suits had to be regularly matured. All the other parties were anxious to confirm the sale. And at the first term after a guardian was appointed to the infants, his suit might have been matured, and a decree of confirmation made therein. Even as it was, both suits were soon matured for a decree, and on the 9th of March 1853 all three of the causes came on to be heard together, when the purchaser was discharged from his purchase. Instead of that, the court should have confirmed the sale, and held him to his purchase. For it then clearly appeared from the proceedings in each and all of the suits, that the interest of all parties concerned required a confirmation of the sale, except perhaps the purchaser, who certainly had no right to complain of it. In a suit brought by a guardian for the sale of the real estate of his ward, under chap. 128 of the Code, p. 535, the court may confirm a sale already made, if the interest of the ward require it. Garland v. Loving, 1 Rand. 396. In that case it was held to be competent for the court to confirm a sale already made, provided the purchaser was willing to abide thereby. And it was argued by the counsel for the appellee in this case, that the court cannot confirm such a sale without the consent of the purchaser. Even if such consent be necessary in ordinary cases, (as to which I express no opinion,) it certainly cannot be in this case. All that the purchaser here can require is a good title; and he cannot prevent the court from giving it to him by withholding his consent to a decree of confirma *218 tion. See also Hughes & wife v. Johnston, 12 Gratt. 479.
I am therefore of opinion, that so much of the decrees appealed from as discharged the appellee from his purchase, and directed the purchase money paid by him, or any part of it, to be refunded, and the land purchased by him.to be resold, is erroneous, and ought to be reversed; that the sale made to him ought to be established and confirmed, and he compelled to complete his purchase; and that the cause should be remanded, to be further proceeded in according to the principles before expressed.
Lee and Samuels, Js. concurred in the opinion of Moiícure, J.
Decree reversed.