Anderson, J.
James W. Crawford, on the 30th of June 1863, became the purchaser of a tract of one hundred and thirth-three acres of land in the county of Augusta, of which Lemuel Weller died seized, and which descended to his two infant children, and by their death, to his father Benjamin Weller, subject to the dower of Margaret Weller, the widow of Lemuel. The land was sold subject to the widow’s dower, which had been laid *845 off to her by metes and bounds. It was sold by eommissionei’s ot the Circuit court of Augusta county, under a decree of said court, in a suit therein depending between Craun and others, against Benjamin Weller, and was sold at public auction to the highest bidder, and brought twenty-two thousand six hundred and ten dollars, in Confederate currency. The sale was reported to the court, and confirmed, and the whole of the purchase money paid down, as the purchaser had the right to do under the decree of sale ; and a deed of conveyance was made by the commissioners to the purchasers, upon the payment of the purchase money, in obedience to the decree. The same tract of land on the 1st day of March 1866, was sold and conveyed, free from incumbrance, (the widow of Lemuel Weller having died in the mean time,) by the said Crawford, and F. M. Young, B. H. Philips and H. M. Bell, who it seems, were jointly interested with Crawford in the purchase, to A. Plunkett Beirne, for $6,650; and by him sold again and conveyed, on the 24tn ot May following, to George If. and John G. Boag.
On the 17th day of July 1866, Benjamin Weller, by leave of the court, filed a petition in the said suit of Craun and others against him, which was still depending, praying a rehearing of the decree under which this tract of land was sold, and of the decree confirming this sale, and also a sale of a house and lots in Mount Sidney, made by commissioners H. W. Sheffey and R If. Trout, under a previous decree in the same cause; at which sale Osborn D. Boss, being the highest bidder, became the purchaser, at the price of $2,560 cash; and praying that both sales may be set aside and annulled. The court awarded rules against James W. Crawford and F. M. Young to appear and show cause why the sale to them should not be set aside, and the deed conveying *846 ^an<^ ^hem should not be set aside and annulled. And at a subsequent term, on the 4th of December, on of Benjamin Weller, leave was given him to file a cross hill; and it was ordered that his petition should taken, received and treated as a cross bill, and that the purchasers of the one hundred and thirty-three acre tract, James W. Crawford and F. M. Young, and the plaintiffs, judgment creditors of said Benjamin Weller, the executors of John Craun, dec’d, and others, be made defendants to the said cross bill, and be compelled to answer the same; and summons was awarded against them. Yo rule or summons seems to have been awarded against Boss, the purchaser of the Mt. Sidney property.
Several grounds are assigned in the petition for setting aside these sales, and the conveyances made in pursuance thereof, under the authority of the decrees of the court. The first is ,that an account should have been taken of the amounts of the debts against the petitioner, and of the fund arising from the sale of property; and it" should appear from some action of the court, that the fund already created was insufficient to pay the debts. It has been held by this court, that it is error to decree a sale of real estate to satisfy debts, before the amount of the debts and their priorities are ascertained. The object of the rule is to secure a good sale of the property by promoting competition at the sale. But the debtor may waive this right.
This suit was brought- by judgment creditors to enforce their judgment liens, there being no personal estate, and to remove impediments to their enforcement; and the debtor, in his answer, which is sworn to by him, says, “Waiving all technical objections,” “being sincerely anxious that his property shall as soon as practicable be made available- to the payment of his debts, (he) will set up no objections to a decree for the prompt sale *847 of his property, only asking that it may he sold on liberal terms as to credit, and that it may be sold altogether, or in two parcels, as may be deemed most ble.” Accordingly, responsive to the wishes of the defendant, thus expressed in his answer, the court being of opinion that a sale of the defendants real estate was manifestly for the advantage of all pallies, and the defendant Weller by his counsel, and his trustee Hugh. W. Sheffey in proper person, consenting, without undertaking first to adjust and settle the respective rights and priorities oi the trust and judgment creditors, decreed the sale of the defendants real estate, his home-place and the Mount Sidney property; saying that all such matters as to the respective rights and priorities of the parties, &c., “ will hereafter be adjusted upon the bringing in of the report hereinafter directed.” “And in order that this cause may be ready at as early a day as practicable to be promptly disposed of,” the decree further directed, an account to be taken by a master commissioner, showing the amounts and priorities of the debts chargeable on the proceeds of said sale, whether by mortgage, by the trust deeds aforesaid, by the deed to the defendant Sheffey, or by judgments; and that he report said account to the court.
• Master Commissioner Harrison, who stated these accounts, made several reports to the court. His last report, dated October 25th, 1860, to which there seems to be no exception, shows that the liens on Weller’s real estate, which were superior to the Sheffey trust, amounted to $16,581.56, whilst the whole available assets did not exceed $18,163.32; showing a deficiency of assets of $3,378.24, to pay the debts which had apriority over the debts secured by the Sheffey ■ trust; that is, the 3d and 4th class of those debts, the 1st and 2d class having a higher security than the deed of trust, and being in *848 c^uc^e<^ $16,531.56. The master was well justified'. in saying, that it was therefore needlessfor him to report the debts which depended on that deed of trust as their security. But in a previous report he had stated those *° which statement of his report there was no exception, and which is shown to be correct by the deed of trust itself. That statement shows, that the debts of the 3d class secured by said deed, amounted to $10,262, and the 4th class to $2,190 ; making together $12,452. Add to this sum $3,378.24, the deficiency of assets, to pay the . debts which had priority to the deed of trust, and we have $15,830.24 of debt, which the proceeds of the sales were short of paying; and this sum must have been greatly swollen by an accumulation of interest. The record does not show the amount of judgments, subsequent to the deed of trust, alluded to by the commissioner. If this report of the commissioner can be relied, on, it shows an indebtedness at the date of the decree-for the sale of the one hundred and thirty-three acre tract, not provided for by the previous sale, vastly exceeding the value of that tract and the Mount Sidney house and lots combined.
Can this report of the master be relied on ? It not having been excepted to by the defendant Weller, or by the creditors, there seems to be no reason why it could not be relied on to show the extent of the indebtedness not provided for by the previous sale, unless the act of' the court recommitting it forbids. The reason assigned by the court, in its decree of the 4th of November, 1863, for recommitting, to wit: that it had been suggested “ that there are liens not yet reported on,” does not indicate an impression that the master had overstated the amount of indebtedness, or that the court had any doubt (when the decree of sale of the one hundred and thirty-three acre tract was made) that the debts to be provided. *849 for amounted to the sum indicated hy the report. It . . . , rather implies that the court was apprehensive that there were other debts not reported on. The petitioner, then, was in great error when, in his petition or cross bill, he says: “The report of master commissioner Harrison, while he brings the interest up to the 1st of Hovember 1859, makes the whole indebtedness of your petitioner $13,022 24,” But the petitioner or plaintiff in the cross bill, does not even now point to any errors in said report of the commissioner, or take any exceptions thereto. And supported as it is by the evidence in the record, and acquiesced in by all the parties to the suit; and as the plaintiff in the cross bill had in his answer to the original bill expressly waived all technical rights, and avowed a desire that his property should be sold for the payment of all his debts, and consented to the first decree for the sale of his property before the amount and priorities of the debts were ascertained; and never afterwards withdrew his waiver; and after the amount of the debts and their priorities were sufficiently ascertained by the report of a master commissioner, to show that the sales made in 1863 were necessary to pay the balance of debts, not provided for by the previous sale, and no exception taken to that report, we cannot say that for this cause the court erred in decreeing the sale, especially as the petitioner does not show now that there was any error in that report, that he was not owing the debts for which his land was sold, or that he has been damaged in any way by the sale of his property at an inadequate price.
The last sales were decreed, in accordance with what ' seems to have been adopted by the court, ¡as the proper, procedure, with the consent and approval of all parties, to ascertain the exact amount of the fund for payment of debts, and then ascertain, or pari passu ascertain the . exact amount of debts and their priorities; and then to *850 distribute the fund, according to the right of each cred- • itor to participate. And to this end the funds, as they were collected, were directed to be placed in the hands of the receiver of the court, where they would be under its control and ready for distribution whenever the full amount of the debts, and the exact rights of each creditor were known. And hence, upon the suggestion that there were other debts which had not been reported, so intent was the court to carry out his plan of meting out to each creditor exact justice in the distribution of the fund, that he recommitted the report to the master, to enquire if there were not other debts and liens beside those which he has reported on, instead of making a distribution of the fund at that term of the court. How to carry out this plan, which in its inception had been assented to by the debtor, and that assent never withdrawn, it was necessary to sell the defendant’s tract of one hundred and thirty-three acres, which had become vested in him during the pendency of the suit, and to which the judgment liens attached, as soon as he became invested with the titlej just as effectually as they did to the real estate he owned when the judgments were rendered. And it was necessary that this property should be sold, that the exact fund for payment of debts might be known in order to a proper distribution, a mode of procedure to which the defendant had assented in the beginning. If, however, it was error, it was not such an error as would affect the purchaser. In Daniel & al. v. Leitch, 13 Gratt. 195, 210 J. Moncure, in whose opinion the other judges concurred, says, “ it is the business of a'purchaser at a judicial sale, to see that all the persons who are necessary to convey the title are before the court, and that the sale is made according to the decree. But he will not be affected by error in the decree, such as not giving an infant a day to show cause, in cases in *851 which a day ought to be given; or decreeing a sale of land to satisfy judgment debts without an account of personal estate.” A fortiori he wili not be affected by the error of decreeing a sale without an account of the amount or priority of debts, if it appear that a sale was necessary.
2d. "With regard to the 2d assignment of error by petitioner, we are not aware that it is per se error to decree the sale of jtroperty to enforce judgment liens without giving him time to redeem, as in the foreclosure of mortgages. "We think that such a practice ought in general to be pursued; and where it is not, and the debtor shows that he has been damaged unjustly by its not being pursued, we are not prepared to say that it would not be good ground for setting aside the proceeding. But in this case the petitioner has not shown that he was damaged by it.
3d. As to the 3d objection, we think it does abundantly appear from the record, that the rents of the land would have been very inadequate to pay the petitioner’s large indebtedness in five years.
4th. The objection that the property was sold for Confederate money. That was an objection which the creditors were more interested in urging than the debtor. If they were willing to receive Confederate money, in payment of ante-bellum debts due them by the petitioner, it was to his advantage that his property should be sold for Confederate money. And the creditors standing by, and allowing the property to be sold for Confederate money, to pay their debts, without objection, it would not lie in their mouths afterwards to object to receive it in payment of their debts. -
5th. The fifth and last assignment of error and ground of objection to.the sale, is, that the petitioner was not a party to the proceeding, and is not therefore bound by it. *852 was a party to the suit, as the record shows. The subposna was sued out against him, and was served upon He was made a defendant by the plaintiff’s bill, and answered the bill, and consented in his proper per30n ^ie sa^e ^is ProPerty without delay, or the observance of technicalities, for the payment of his debts. He appeared also by counsel, and consented to a decree for the sale, before the amounts and priorities of the debts were ascertained and settled, being content to await the ascertainment of the exact amount of the fund he would have for the payment of debts by an actual sale of his property, before the rights of the several creditors, in its apportionment and distribution, should be determined. After the sale was made under the consent decree, he resisted its confirmation, upon the ground that the sale was improperly conducted, and the property was sacrificed, or sold for an inadequate price, in his absence, attending to an important suit which he had in Kentucky; and from which, if he had been successful, he hoped to get money enough to pay all his debts. The record shows that in this attempt to set aside the sale, which he vigorously prosecuted, he was not unrepresented by counsel; and though Mr. Sheftey may have ceased to act as his counsel, he had other counsel retained for his defence, who-appeared on his behalf. But he failed in his purpose to-set aside the sale; and having,perhaps, been disappointed in his expectations from Kentucky, and knowing that his property in Augusta was very inadequate for the payment of his debts, he resolved to remove to" a remote part of the State, and to leave the suit and his Augusta property in’ the hands of the court, to be disposed of as might be deemed best, as far as-it would go in the payment of his debts. As we have seen, the proceeds of the sale which had been made of his property, were very inadequate to the payment of his debts, and that it was *853 necessary to execute the decree for the sale of the Mt. Sidney property, which had been made with his consent, and also to decree the sale of another tract of land, which he then owned, in order to raise a fund sufficient for the payment of his debts. By the petition of the creditors the fact was brought to the knowledge of the court, that he was the owner of this tract of land, and that the same was subject to their judgment liens; and the court was asked to decree its sale also. This court cannot perceive that a court of equity had not the same jurisdiction in this suit, to enforce the judgment liens against the land in question, that it had to enforce the liens which had attached when the suit was commenced. The object of the suit was to enforce the judgment liens, not against any particular tract of land, but against all the real estate of the debtor to which the liens attached. It was to enforce the liens wherever and whenever they attached. And the lien having attached to this land, during the pendency of the suit to enforce it, did not require that the relief prayed for in the original bill should be varied. It was supplemental matter, brought to the notice of the court by petition, virtually involved in the issues made by the original bill, and perfectly consistent with the relief prayed for. It is not, therefore, a supplemental suit. The whole record constitutes but one cause; and one replication and one cause are to be set down for hearing Stor. Eq. Plead. § 382. And the plaintiff in this cross bill, or petition for a rehearing, being before the court as a party defendant, must be taken to be cognizant of this proceeding. If he could not be present in person, he could be by counsel, as the record indicates he was in this case; and if he was not, it was becanse he did not choose to be. And if he has sustained any loss by it, it is more equitable that he should bear it, than that it should be thrown upon innocent purcha *854 sers, under the decree of the court, who had no knowledge of any irregularity, (the record exhibiting none,) who honestly purchased at a fair sale, which-was confirmecl by the court, paid the purchase money, complied with all the terms imposed by the court, and received a . . * T . conveyance of the title. In the case referred to, supra, J. Moncure, after stating the doctrine before recited, says: “A fortiori he (the purchaser) will not be affected by any imperfection in the frame of the bill, if it contain sufficient matter to show the propriety of the decree.”
In this case, if the purchaser had looked to the record, he would have seen that all the persons who are necessary to convey the title were before the court; that the sale was made according to the decree ; and that it was in the power of the court to make him a good title to ' the land. If there were any irregularities in the proceedings, they were matters which concerned the parties to the suit; they did not affect him; and of them, he not being a party to the suit, cannot be held to have been cognizant, or bound to have taken notice. He gave what was then considered a high price for the land, in Confederate money; which, although now worthless, was then the only currency in the country, and had a well known purchasing power. He paid the whole of the purchase money into the hands of the general receiver of the court, as directed by the decree, and received from the court a deed conveying to him the title; and, if the money was suffered to lie in bank, until it has perished, it is not his fault. He was not answerable for any disposition which the court might have made of the purchase money. Daniel & al. v. Leitch, (supra,) and Brown v. Wallace, 4 Gill. & Johns. R. 479. His contract was complete and executed; and under it he took possession of his land. After a lapse of three years, and after the purchaser had sold and conveyed the land to *855 another, with general warranty, and received the largest portion of the purchase money, and it had been again sold to another innocent purchaser, the plaintiff in cross bill files his petition in this same suic, wherein he was a defendant, for a rehearing; and seeks to set aside the sale and to annul the purchaser’s title, without even offering to refund to him a dollar of his purchase money; assigning as his only excuse for his delay in inaugurating the proceeding, that he had removed to a remote part of the State during the pendency of the suit, and that a war broke out, which cut him off -from all communication with the court, although that war had terminated more than a year before his petition was filed. He asks the court to undo what it has deliberately done ; to divest the plaintiff’s title, and the title of innocent purchasers from him, without showing that he did not owe the debts for which his land was sold, or that the land was not bound for them, or that the land was sold for an inadequate price, or that there was any unfairness in the sale, or that any injustice or injury was done him by decreeing the sale, or even that he will be benefitted by setting it aside. The court is, therefore, of opinion to reverse the decree of the Circuit court of the 18th of June 1868, so far as it sets aside and annuls the decree f the 15th of June 1868, directing a sale of said land, and so much of the decree of November 4th, 1863 as confirms the sale and directs a deed to be executed for the same; to dismiss the appellees cross bill, as to the appellants, at his costs; and to remand the cause for proceeding to be had therein to a final decree.
The other judges concurred in the opinion of Anderson, J.
The decree was as follows:
The court having maturely considered the transcript of the record of the decree aforesaid, and the arguments *856 of counsel, is opinion for, reasons stated in writing and filed with the record, that there is no error in the decree of the 15th day of June 1868, directing the sale of the tract of 133 acres of land, which can affect the r%^ts the purchasers under said decree; nor in the decree of November 4, 1863, which confirms the sale and directs a deed to be executed to the purchasers^ It is, therefore considered that the decree of the 18th of June 1868, so far as it sets aside and annuls the said decree of the 15fch of June 1863, and so much of the said decree of the 4th of November 1863 as confirms the sale made under the decree aforesaid, and directs a deed to be made to the purchaser, be reversed and annulled; that the appellees petition or cross bill, as against the appellants, be dismissed at his costs; that the cause be remanded to the said Circuit court of Rockingham county for further procedings to be had therein, in order to a final decree; and that the appellants be allowed their cost incurred in the prosecution of their appeal aforesaid here, out of any fund in said Circuit court applicable to the claims of the creditors who are appellees.
■ All which is ordered to be certified to the said Circuit court of Rockingham county.
DiCREE REVERSED.