AT THE JANUARY TERM THEREOF, HELD AT CHARLES-
TON, IN THE COUNTY OF KANAWHA, COMMENC-
ING ON THE TENTH DAY OF JANUARY,
1877, AND ENDING ON THE THIRD
DAY OF MAY, 1877.

Charleston,

MORRIS' ADMR. v. PEYTON'S ADMR.

Decided April 28, 1877.

1. The circuit court erred in adjudicating the merits of the cause by its decree of June 20, 1874, the cause not being ready for hearing, for the want of proper parties.

    <span style="float:right">1877.<br>January Term.</span>

2. Who are proper parties to this cause—see opinion of the Court.

This was an appeal from two decrees of the circuit court of Kanawha county.

Moore, Judge, delivered the opinion of the Court, in which will be found a sufficient statement of the cause. The Hon. Joseph Smith, Judge of the seventh judicial circuit, presided at the hearing below.

*Thomas L. Brown* for the appellant.

*James M. Laidley* for the appellee.

MOORE, JUDGE:

P. W. Morgan, as administrator of W. M. Peyton, deceased, presents this case to us, upon an appeal from two decrees rendered therein, by the circuit court of Kanawha county, at the June term, 1874, overruling the demurrer to the bill, and refusing to consolidate this suit with the creditors' suit of William Smoot's administrator *v.* P. W. Morgan, administrator of W. M. Peyton, deceased, and others, and directing that a boundary of land on Fork creek of Big Coal river, in Boone county, should be sold at public auction, to satisfy the demands of the plaintiff, Dickinson Morris, administrator of Madison Morris, deceased.

It appears that Dickinson Morris, as administrator of Madison Morris, deceased, filed his bill of complaint, May, 1873, in the circuit court of Boone county, against P. W. Morgan, as administrator of William M. Peyton, deceased, and James H. Brown and Thomas L. Brown, as trustees, &c., in which he alleges as follows: That, "on the 20th day of March, 1861, the said Madison Morris, since deceased, and one Stephen Holstein, executed to William M. Peyton, since deceased, a deed conveying to the latter a large tract of land situated on Fork creek, a tributary of Big Coal river, and upon the branches and head-springs of the same, in Boone county, ——the boundaries of which are set out in the said deed, a certified copy of which is herewith filed as part of this bill. This deed was duly admitted to record in the recorder's office of said Boone county, on the 21st day of May, 1861. On reference to said deed, it will be

seen that of the purchase money originally agreed to be

paid by said Peyton for said tract of land, there re- mained, on the said 20th of March, 1861, due to the said Morris, $551.13, with interest on $151.13 from the 1st day of April, 1852, and on the residue ($400) from the 1st day of April, 1853. The plaintiff files herewith, and as part of this bill, the original notes, executed on the 8th day of February, 1851, by William M. Peyton (through his agent in that behalf, W. D. Pate), to the said Madison Morris (now deceased), showing that the balance of purchase money for said land recognized as remaining due on the said 20th of March, 1861, was cor- rectly set forth. It will also be seen by the said deed, that a lien was reserved therein for the said balance of purchase money, $651.13, with interest, &c., of which sum $100 was due to Stephen Holstein, leaving due to the plaintiff's intestate, said sum of $551.13, as claimed above, with interest as aforesaid."

The bill then alleges that the land was conveyed to Peyton only with special warranty; that the grantor's title to said land was in nowise impaired, either before or after the date of their deed to Peyton, by any con- tract, conveyance, lien, or otherwise, of theirs, and that their dealings with said Peyton, in relation to said tract of land, were in every respect in good faith; that Pey- ton departed this life intestate, leaving no personal prop- erty known to the plaintiff; that the administration of his estate had been committed, by an order of the county court of Kanawha county, to P. W. Morgan, sheriff of said county; that "said William M. Peyton, before his death, and about the —— day of ——, 1866, conveyed said tract of land to James H. Brown and Thomas L. Brown, in trust for certain purposes, and amongst others, for that of paying off the purchase money due the plain- tiff on said tract of land." The plaintiff then charges that "Peyton, in his lifetime, did not pay off any part of the purchase money due his intestate on said tract of land, nor did said trustees pay any part of the same, nor

1877.
January Term.
_____
Morris' adm'r
v.
Peyton's adm's.
has the administrator of said Peyton, since his death, paid any part of the same. If said trustees have sold any part of said tract of land, the plaintiff is not advised of it; the plaintiff knows of said trustees selling and receiving money for timber removed therefrom—to what amount he is not advised." He further alleges that he "has no wish to investigate the accounts of said trustees, or to involve himself with a settlement of the same, but having a clear and indisputable right to subject so much of said land as may be necessary to the payment of the lien reserved by his said intestate for the said balance of said purchase money, he now asserts that right, and calls for a sale of so much of said land as may be necessary to discharge said lien, together with the costs of this suit."

The prayer of the bill is, that "James H. Brown and Thomas L. Broun, trustees as aforesaid, and P. W. Morgan, administrator as aforesaid, may be made defendants" thereto; "that so much of said tract of land as may be necessary for the purpose aforesaid, be decreed to be sold," and for general relief.

Plaintiff, after the prayer of his bill, asserts that he files with the bill, as a part thereof, a copy of the deed of trust made by Peyton to Brown and Broun, but upon inspection it appears to have been made June 8, 1867, instead of "the —— day of ——, 1866," as alleged in said bill.

The suit was afterwards removed to, and docketed in, the circuit court of Kanawha county.

Philip W. Morgan, as administrator of said Peyton, answered the bill, stating that on the 8th of February, 1851, Stephen Holstein and the said Madison Morris, then in life, entered into a contract with said Peyton for the sale of a certain tract of land on Forked creek of Big Coal river, in Boone county, for the sum of $1,500; that Peyton paid on said contract $848.87—that is to say, $448.87 to said Madison Morris, and $400 to said Stephen Holstein, as is fully set forth in the deed

executed on March 20, 1861, and filed with the bill of complaint; that on the 20th of March, 1861, said Morris and Holstein executed a deed to Peyton for said land, and retained a vendor's lien for $651.13, the unpaid purchase money, to-wit: $551.13 as due to said Morris, with interest on $151.13 from April 1, 1852, and on $400 from April 1, 1853, until paid; also on $400 as due Holstein, with interest from April 1, 1853, until paid; that the title to said land has proven to be very defective; that the said land was covered by the Beech and Norton survey, and that the same was claimed by parties who had purchased the said land at the delinquent sale of said Beech and Norton survey; that the said land was held and claimed by the heirs of Thomas Fowler, deceased, under, and by virtue, of the James survey; that the title of the said Madison Morris and Stephen Holstein has proved, upon examination, to be so defective that the said William M. Peyton has only been able to perfect his title to one-fourth of the land sold to him by Morris and Holstein; that a compromise was made and entered into, April 15, 1867, between James H. Brown, of the one part, representing the Beech and Norton claimants to the said land, and Thomas L. Broun, of the second part, representing William M. Peyton's title acquired from Morris and Holstein, and E. M. Fowler and others, of the third part, representing the heirs of Thomas Fowler, deceased, wherein and whereby the said William M. Peyton gave up his title to three-fourths of the said land in order to make good the Morris and Holstein title to one-fourth of the land mentioned in the deed of March 20, 1861 (a copy of which compromise respondent filed as a part of his answer). Respondent further alleged, that Morris and Holstein had received more than *one-half* of the purchase money for which they sold said land to said Peyton, and that Peyton has acquired a good title to only *one-fourth* of said land; that respondent is advised, and so avers, that Morris and Holstein represented to Peyton, at the date of said contract, that their title to

*1877.*
*January Term.*

*Morris' adm'r*
*v.*
*Peyton's adm'r.*

1877.
January Term.

Morris' adm'r
v.
Peyton's adm'r.

said land was good and valid; and that Peyton, relying on such representations as to the title to the land, did contract for the purchase of the same at $1,500, and did make various payments thereon, in all amounting to $848.87; that he is entitled to an abatement of the purchase money on account of said defective title; that he owes nothing to the complainant on the purchase aforesaid, as Peyton had paid more than *one-half* of the purchase money to Morris and Holstein, and acquired title to only *one-fourth* of the land. Respondent also demurred to the bill upon the ground that the bill should have made the heirs of Thomas Fowler, deceased, the heirs of said Peyton, deceased, and also James H. Brown, in his own right, and as claimant under the Beech and Norton survey, and Thomas L. Broun, in his own right, and Stephen Holstein, parties defendant; that said Peyton died some five years before the filing of the answer, leaving a widow and several children; that the interest of the said Peyton's heirs in the said land is *one undivided fourth part* thereof.

Respondent prays that his answer may be considered and treated as a cross bill.

James H. Brown and Thomas L. Broun, as trustees, answer, that on the 8th day of June, 1867, Peyton conveyed to them, as trustees, certain lands on Forked creek, with authority to sell and dispose of same, and apply proceeds as follows:

(1). Ten per cent of the proceeds to the respondents for services as trustees.

(2). The residue thereof to the said Wm. M. Peyton.

They deny that the land was conveyed to them for the purpose of paying off the purchase money, as alleged by complainant. They deny that they have sold any of said land, or any timber thereon, or cut any timber, or received any money for timber removed therefrom. But on the contrary, that they have made advancements of money in the execution thus far of the trust.

John A. Barker filed a petition in said cause, in which 1877.
January Term.
Morris' adm'r
v.
Peyton's adm'r. he alleges " that he is the holder and owner, by transfer for the full value thereof, of the claim of said Holstein for said $100, purchase money aforesaid," and filed therewith as an exhibit, " the original note of said Peyton, made by his duly authorized agent, Wm. D. Pate, showing that the said sum of $100 is due the said Holstein," and that petitioner " is holder and owner of same." He also adopts the charges and prayer of the bill, and unites in calling for a sale of so much of the land " as may be sufficient, also, to pay the purchase money due the plaintiff;" and prays that " the defendant" therein before named, may be made defendant thereto, and that Stephen Holstein may also be made defendant thereto, and for general relief.

The court also granted a rule on the complainants in this cause, and the cause of Augustus Pack v. Peyton's adm'r and others and Wm. Smoot's adm'r v. Peyton's adm'r and others, to show cause why the suits should not be consolidated.

The court overruled the demurrer, refused to consolidate, and as to the petition of Barker, as the defendants therein named had not been summoned, the court refused to make a decree thereon, but decreed to the plaintiff the relief prayed for, and directed the sale of so much of said land as may be necessary to discharge the debt, interest and costs of the suit, together with the costs of sale.

The pleadings and proceedings in the cause are imperfect and irregular, but enough appears to show conclusively, that the court erred in overruling the demurrer for the want of proper parties.

By the death of Peyton, his widow and heirs were placed in his shoes as to his rights and interests in said land.

The widow had a particular interest that should have been recognized, and an opportunity afforded her to proect it. She and the heirs may have been able to have

satisfied the court that the purchase money had been paid in full, or may have shown some special reason or cause why the plaintiff should not recover in this suit. If the purchase money had been paid, she was entitled to dower; but if, as alleged, a part still remained unsatisfied, and the court found it necessary to decree a sale of the land therefor, she would still have a right to be endowed out of the surplus; therefore she should have been made a party, not only to protect her own interest, but for the interest of the purchaser, by removing any cloud upon his title that might exist by virtue of her claim to dower. There can be no more doubt in this case, than there was in the case of *Daniel and others* v. *Leitch*, 13 Gratt. 195, that at the death of Peyton, his widow had a right of dower in the said tract of land, subject to the vendor's lien. She had a clear right to relieve the land from that incumbrance, in order to make her claim to dower available. "She was entitled to go into equity to have the land sold, the incumbrance discharged, and her right of dower in the surplus secured to her." (Id.) If, then, she could be complainant, *a fortiori* she should be made a defendant to a suit like this.

That the personal representative and heirs of Peyton should be parties, I need merely refer to Story's Eq. Pl. § 177, that, "if the bill seeks to enforce the lien for the purchase money on the land itself, the heirs of the purchaser, if it is intestate estate, * * * are necessary parties, and the personal representative also." So, also, "if the vendor should die, and his personal representative should seek a specific performance against the purchaser, the heir or the devisee of the vendor should also be made a party to the bill; for he alone is competent to convey the legal title to the estate to the purchaser; and the latter has a right to know, whether there is any sound objection, which the heir or devisee can raise against the contract." Story's Eq. Pl. § 177, a. *A fortiori*, when both vendor and vendee are dead, and the personal representative of the vendor brings his bill to

enforce the lien for the purchase money, the heirs of the vendors should be made parties.

That Holstein should have been made a party cannot be questioned, as he was not only a joint vendor, but also beneficiary under the vendor's lien, and further as it is questionable whether Holstein properly executed the deed, it was important to have him before the court that he might be compelled to make and acknowledge a proper deed. And, as John A. Barker claims to be assignee of said Holstein of a portion of the purchase money, as *prima facie* appears from his petition, he is a proper party to the bill, that he may protect his interest as assignee therein. *Davis et al. v. Henry,* 4 W. Va., 571.

Again, upon the principle that all persons whose interests are to be affected or concluded by the decree ought to be made parties, on a bill to foreclose a mortgage and *a fortiori* to sell the mortgaged property, (Story's Eq. Pl. § 193); and therefore as all subsequent incumbrancers are proper, if not indispensable parties, I am of opinion that the same principle should apply when a bill is brought to enforce a vendor's lien, and that the derivitive purchasers, or vendees of the vendee, of a part of the land covered by the vendor's lien, are proper, if not necessary parties, having purchased before suit brought by complainant; because, if the part of the lands remaining in the hands, or possession of the vendee (their vendor) is not sufficient to pay the balance of the purchase money, when sold, the lien could be enforced against the residue of the land in their possession; therefore, they should be parties to the bill, to protect their interest in the premises, either by showing cause against the enforcement of the lien, or by redeeming the land from the lien; and also, for the object of a final settlement of the rights of all the persons in interest, and thereby prevent a multiplicity of suits. (Story's Eq. Pl. § 186 and notes. *Beirne v. Brown,* 4 W. Va., 72, where it was held by a majority of the Court, that sub-

sequent purchasers " although they may not have been necessary parties, they are proper parties.")

Whatever may be the effect or virtue of the deed of trust made June 8, 1867, by Wm. Peyton to James H. Brown, and Thomas L. Broun, and the written agreement of compromise of 15th day of April, 1867, which it is not our province now to decide, yet as the deed of trust is referred to by the bill of complainant, and the answer of Brown and Broun, and thus indirectly made an exhibit; and the agreement of compromise of April 15, 1867, having been made an exhibit by the answer of defendant Morgan, attempting to show thereby that Brown and Broun, as trustees and in their own right, and the heirs of Thomas Fowler, deceased, were interested in the subject matter of the suit by purchase from, or assignment by said Wm. Peyton, and were therefore interested in the object of the suit, and asked that they be made parties thereto. I am of opinion, that if the said deed of trust and agreement of compromise are legal and *bona fide*, which we cannot now decide, they were proper parties, and should have been made parties defendant, for the reasons and upon the principles before given; and whether the said deed of trust, and the said agreement be legal and *bona fide* or not, the pleadings show a *prima facie* interest, at least, on the part of those persons, in the subject matter of the suit, such as to make it important, if not absolutely necessary to the interest of all parties, to adjudicate their pretensions, if not claims, so as to remove all clouds to title and avoid other and further litigation.

I am therefore of opinion that the circuit court erred in adjudicating the merits of the cause by its decree of June 20, 1874, the cause not having been ready for hearing for the want of proper parties; and that said decree should be reversed at the costs of the appellee, to be levied of the assets of his decedent in his hands to be administered; and the cause remanded to the circuit court of Kanawha county, that proper parties may be

made thereto, in order to a proper hearing and decision of the cause according to the rights of the several parties.

As to overruling the motion for consolidation, the record does not show what was the nature of the two suits which were attempted to be consolidated with this, and therefore this court cannot determine whether there was error or not in that respect.

The other judges concurred.

DECREE REVERSED, and cause remanded to the circuit court of Kanawha county for further proceedings therein.